UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| VIVIAN ARONSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:05-cv-1181-DFH-WTL |
| | ) | |
| HEALTH CARE EXCEL, INC, | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Vivian Aronson has sued her former employer, defendant Health
Care Excel, Inc., for religious and sex discrimination in violation of Title VII of the
Civil Rights Act of 1964 and for alleged wrongs under Indiana law.  Defendant has
moved for summary judgment on all claims.  Plaintiff has not contested the
motion as to claims for sex discrimination and most state law claims.  The claims
that remain in dispute are her claims of a hostile work environment based on her
religion, retaliation in her termination, and her claim for intentional infliction of
emotional distress.  As explained below, defendant's motion is granted as to all
claims except the Title VII retaliation claim.

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess
the proof in order to see whether there is a genuine need for trial."  *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate when there are no genuine issues of material fact, leaving the moving party entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A factual issue is material only if resolving the factual issue might change the suit's outcome under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. *Id.* In deciding a motion for summary judgment, a court may not assess the credibility of witnesses, choose between competing inferences, or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light reasonably most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. See Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 255; *Celotex*, 477 U.S. at 323.

To manage the presentation of factual and legal issues in motions for summary judgment, this court has adopted Local Rule 56.1. In responding to a motion for summary judgment, the non-moving party must file a brief including a "Statement of Material Facts in Dispute." Local Rule 56.1(b). This section must identify "the potentially determinative facts and factual disputes which the nonmoving party contends demonstrate that there is a dispute of fact precluding

summary judgment." *Id.* Such factual assertions must also "be supported by appropriate citations" to the record or evidence submitted with the brief. *Id.*

Aronson's brief appears to have deliberately disregarded these requirements.[1] Her brief in opposition to summary judgment does not respond with specificity to Health Care Excel's statement of "Material Facts not in Dispute." She instead has offered only a general "Summary of Facts" that at best addresses only obliquely the facts asserted by Health Care Excel. More troubling, a number of the asserted "facts" listed in this summary lack citation to the record, including key facts raised during the course of her arguments. For example, plaintiff asserts at page 12 of her brief that she "had just voiced an additional complaint about [supervisor] Lashbrook's treatment of her, the day prior to Mrs. Aronson's termination. . . ." That fact might well be material, but the assertion is not supported with any evidence. For more examples, see, *e.g.*, Pl. Br. at 5-7. As Local Rule 56.1(e) makes clear, the court has no independent duty to search and consider any part of the record not specifically cited in the proper manner. *Id.*; accord, *Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004) ("court should not be expected to review a lengthy record for facts that a party could have easily identified with greater particularity"); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (mere disagreement with moving party's assertion is not sufficient without specific record citations); *Waldridge v. American*

---

[1]Aronson stated: "The Plaintiff does, in fact, dispute many of the facts stated by the defendant. Rather than address each individual fact, the Plaintiff submits the following Summary of Facts." Pl. Br. at 2.

*Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (court need not "scour the record" to search for evidence opposing summary judgment); *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir. 1989) (same).

Local Rule 56.1(i) allows the court, in the interests of justice or for good cause, to excuse failure to comply strictly with the terms of the rule.  There is no good reason to do so here.  Aronson's failures go to the heart of the rule's purpose and its mechanism for managing the summary judgment process.  Given the importance of such local rules, the Seventh Circuit has "consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment." *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000), citing *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th Cir. 1995), and *Waldridge*, 24 F.3d at 922.

Especially in a case like this one, where the summary judgment motion involves a substantial volume of evidence covering virtually all the issues on the merits of the lawsuit, a party cannot delegate to the court the task of finding the evidence relied upon to create a genuine issue of fact.  Pursuant to Local Rule 56.1(e), the following statement of facts therefore includes those properly offered by defendant that plaintiff failed to challenge properly, as well as those additional facts asserted by plaintiff with proper citation to the evidence.

*Facts for Summary Judgment*

I.    *Aronson's Employment with Defendant*

Defendant Health Care Excel, Inc. ("HCE") provides a variety of services intended to control costs and assure quality in health care.  In November 2000, HCE hired plaintiff Vivian Aronson to work as a Prior Authorization ("PA") reviewer.  See Pl. Ex. B.  When Aronson first joined HCE, PA Director Marilyn Reynolds oversaw the PA department as a whole, and PA Supervisor Lynda Servies was Aronson's immediate supervisor and was responsible for her hiring.  It was well known from the outset of Aronson's employment that she is Jewish.  Servies Aff. ¶ 12.

Almost immediately after starting employment, Aronson requested and received accommodation for her religious practices during the winter months.  Servies Aff. ¶ 13.  Each Friday during the winter, Aronson was allowed to leave work early so that she could arrive home before sundown to observe the Sabbath.  Aronson Dep. 233-34.  She also requested and received time off on a number of occasions to observe various Jewish holidays.  The undisputed facts show that whenever Aronson submitted a request, HCE allowed her to take time off or to adjust her schedule.

In April 2003, Aronson was promoted to the position of PA Specialist by then-PA Director Deanna Witt.  Aronson Dep. at 98.  This promotion followed two

years in which Aronson had received "outstanding" performance evaluations. Aronson Dep. 273.   In her new position, Aronson's duties included defending earlier PA determinations during the appeals process.  See Def. Ex. I (describing the duties and responsibilities of a PA specialist for HCE).  After several months in this new position, Witt evaluated Aronson's performance as a 3.84 out of 4.  Pl. Ex. C.  This score represented a rating of "competent."

In November 2003, Witt asked Mary Kapur (HCE's Executive Director of the Center for State and Specialized Contracts) if she could assign Aronson to an open supervisory position in the PA department until a permanent replacement could be found.  Kapur Aff. ¶¶ 5, 9.  Witt told Kapur that Aronson did not want the position on a permanent basis but wanted to "help out" on an interim basis.  *Id.,* ¶ 9.  Kapur approached Servies with the proposal to have Aronson work as a supervisor temporarily.  Servies told Kapur that the department did not need anyone in the position on a temporary basis because it could handle the workload until a permanent replacement was found.  Servies Aff. ¶ 17.  Servies also told Kapur that it was more important that Aronson remain in her current position as "a production worker."  *Id.*  Kapur ultimately rejected Witt's and Aronson's proposal.  Kapur Aff. ¶ 11.

In August 2004, Witt resigned from HCE after a personal altercation with another employee. In the aftermath of Witt's resignation, Servies took over the duties of PA Director on a temporary basis.  Servies began to scrutinize Aronson's

work and counsel her on certain deficiencies.  Aronson Dep. at 120-21.  Servies promoted Kim Lashbrook to the position of PA Director in October 2004.  Servies told Lashbrook to monitor Aronson's work product closely.  Servies Aff. ¶ 24.[2]

Prior to Witt's resignation, Kim Lashbrook was the PA supervisor in the department.  Lashbrook Aff. ¶ 6. There is evidence that Lashbrook had her own reasons for closely scrutinizing Aronson's work.  Lashbrook testified that Witt had played favorites within the department during her tenure and had promoted individuals because of her friendships with them.  *Id.*, ¶ 9.  Lashbrook further testified that Aronson was a personal friend of Witt and had received preferential treatment as a result.  *Id.*, ¶¶ 9-11.  Aronson testified that after Witt departed and Lashbrook took over as PA Director, Lashbrook was particularly hard on at least three employees who were previously friendly with Witt.  Aronson Dep. 294-95, 328.  These three were Aronson, Beth Rich, and Mary Wilson.  *Id.*  Rich and Wilson were not Jewish.  *Id.* at 314, 328.  In general terms, however, Aronson claimed that she was treated even worse than Rich and Wilson.  *Id.* at 295. Aronson testified that she complained to Servies that Lashbrook treated her poorly and referred negatively to her religion, but was not aware of any action taken based on her complaint.  *Id.* at 102-03.

---

[2]Servies testified that Aronson's work product contained typographical errors, that she did not respond to administrative review requests in a timely fashion, and that she was not retaining documentation per HCE's internal policies.  Servies Aff. ¶ 21.  Servies testified that Aronson's work product was "clearly worse" than the other PA supervisor who worked in the department at the time.  *Id.*, ¶ 22.

II.      *Specific Instances of Alleged Harassment*

Aronson claims that throughout her tenure with HCE, she was subjected to a number of incidents of harassment based on her religion.  In September 2001, Reynolds and Servies met with Aronson to express their concerns about her excessive absenteeism.  During the meeting, Reynolds asked Aronson if she wanted to take part-time status.  Servies Aff. ¶ 15.  Aronson testified that Reynolds told her:  "since you people have so many holidays, you should go on part time." Aronson Dep. 199.  Aronson reported the incident to Carol Kelly, then-director of human resources at HCE.  *Id.*  Aronson remained a full-time employee, and after she reported the incident, no one at HCE ever approached her about taking part-time status again.  *Id.*

Aronson claims that Servies frequently referred to her as "Sadie" when Aronson wore a particular pair of shoes. Aronson Dep. 180-81. According to Aronson, the term "Jewish Sadie" is derogatory, *id.* at 181, though that is not the term that Servies used, and Aronson has not explained the point.  Lashbrook at one point allegedly pinned a note over the label of Aronson's coat which read: "buy your clothes at Wal-Mart just like the rest of us."  Aronson Dep. 287-88. Aronson testified that she complained about this note to human resources director, Linda Harris.  *Id.* at 150.

In September 2004, Aronson allegedly overheard two administrative assistants poke fun at her as being cheap: "They said don't ask Vivian to buy any

of the popcorn, you know how cheap Jews are." Aronson Dep. 151. She complained to Servies about the comment. Servies acknowledges receiving the complaint but testified that she investigated and could not substantiate Aronson's complaint. Servies Aff. ¶ 23. Aronson later sent an email claiming that Servies had disclosed the substance of her complaint to other employees, and that as a result she had been subjected to rude behavior.

III.   *November 2004 Performance Review, PIP, and Termination*

Aronson claims that after Witt left HCE, Lashbrook and Servies carried out a campaign of harassment against her that ended with her termination. In November 2004, Servies and Lashbrook completed a performance evaluation for Aronson. They assigned her an average performance score of 2.31 out of 4, which fell in the "adequate" range on HCE's scale. Def. Ex. M. Attached to the evaluation was an addendum with extensive criticisms of Aronson's work product. In the addendum, Lashbrook discussed Aronson's typographical issues, her persistent need for assistance in carrying out assigned duties, and a "defensive attitude" toward any review of her work. *Id.* Aronson claims that a number of these criticisms were unfounded because they were out of her control. For example, Lashbrook and Servies had advised Aronson to rely on her word processor's spell-check function to correct documents. Aronson testified that the spell-check function on her computer was malfunctioning at the time. Aronson Dep. at 282-84. Aronson had contacted HCE's information services department, but the software problem was never resolved. *Id.* Lashbrook had also criticized

-9-

Aronson's failure to issue letters within a seven-day period.  *Id.* at 286.  On at least some occasions, however, Aronson claims that letters had been late because Lashbrook had not signed them promptly.  *Id.* at 287.

On November 16, 2004, four days after issuing this performance review, Lashbrook discovered paperwork on Aronson's desk that she had failed to send in a timely fashion.  Lashbrook Aff. ¶ 16.  After this discovery, Servies and Lashbrook decided to place Aronson on a Performance Improvement Plan ("PIP").  Servies Aff. ¶ 26; Lashbrook Aff. ¶ 17.  Aronson was counseled about the PIP by Servies, Lashbrook, and human resources director Linda Harris.  Aronson Dep. at 214-20.  Among the many issues discussed in the PIP was the need to copy all signed letters and to place those copies in the appropriate files.  Def. Ex. N.  The PIP stated that the failure to comply with its conditions "may result in termination."  *Id.*

After the meeting, Aronson left work for a doctor's appointment.  Lashbrook then gave permission to HCE facilities manager Brenda Ashcraft to unlock the department's paper shredding bins to check the paperwork inside.  According to Lashbrook, she suspected based on Aronson's demeanor at the meeting that Aronson might have destroyed certain documents after hearing she would be placed on a PIP.  Lashbrook Aff. ¶ 21. Lashbrook discovered that the shred bins contained various original documents that were under Aronson's responsibility.  *Id.*, ¶ 22.  These included original administrative review requests, file folders

containing original administrative review documentation, original letters with Lashbrook's signature, original copies of medical record documentation, and document evaluation forms. *Id.*

Aronson has testified, however, that it would have been impossible for her to have put these documents in the shred bin because she had been placed on a medical restriction against pushing, pulling, or lifting any weight at all. See Pl. Br. Ex. L. Aronson claims that during this time, she did not even carry a purse without using a cart. Aronson Dep. 303. Aronson testified that Lashbrook knew about these restrictions, *id.* at 302, but nevertheless advised Servies that Aronson was the culprit behind the almost-destroyed documents.

When Servies was informed about the contents of the shred bin, she made the decision to terminate Aronson. Servies Aff. ¶¶ 27, 28. Aronson was informed of the decision the next day, November 18, 2004. In January 2005, Aronson filed a charge of discrimination with the EEOC alleging that she had been subjected to a hostile work environment on the basis of sex and religion and that she had been retaliated against for complaining of the hostile work environment.

*Discussion*

I.   *Hostile Work Environment*

Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a).  Title VII can be violated where discriminatory harassment so permeates the work environment that working conditions are altered.  See, *e.g.*, *Holman v. Indiana*, 211 F.3d 399, 402-03 (7th Cir. 2000) (sex discrimination), citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993).   In the relatively few cases alleging a hostile environment based on religion, courts adapt the standards from the far more numerous cases alleging hostile environments based on sex or race.  See *Shanoff v. Illinois Dep't of Human Services*, 258 F.3d 696, 704 (7th Cir. 2001); see also *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (encouraging efforts to harmonize standards for different types of harassment).  To survive summary judgment on a claim that her work environment was hostile to her religion, Aronson must come forward with evidence that would allow a reasonable fact finder to conclude that: (1) she was subject to unwelcome harassment; (2) the harassment was based on her religion; (3) the harassment was sufficiently severe or pervasive as to alter the conditions of her employment and to create a hostile or abusive working environment; and (4) there is a basis for employer liability.  See *Rhodes v. Illinois*

*Dep't of Transp.*, 359 F.3d 498, 505 (7th Cir. 2004) (alleging hostile environment based on sex); *McPherson v. City of Waukegan*, 379 F.3d 430, 437-38 (7th Cir. 2004) (same).

Aronson bases her hostile work environment claim on incidents where co-workers and supervisors made comments that she contends related to her Jewish faith. Lashbrook allegedly once pinned a note to the label of Aronson's coat that read, "buy your clothes at Wal-Mart just like the rest of us." Aronson Dep. 287-88. Aronson testified that Lashbrook, both as a co-worker and eventually as Aronson's supervisor, also used unspecified derogatory language toward Aronson on a regular basis. See Aronson Dep. 103-04. Aronson heard two secretaries poke fun at Jewish people for being cheap: "They said don't ask Vivian to buy any of the popcorn, you know how cheap Jews are." *Id.* at 151. Another co-worker once commented that Aronson was rich because she was Jewish. *Id.* at 150.

As noted earlier, human resources representative Marilyn Reynolds suggested in 2001 that Aronson become a part-time employee after she had taken time off for religious reasons. Servies Aff. ¶15. Aronson claims that Reynolds told her, "since you people have so many holidays, you should go on part time." Aronson Dep. 199. Servies occasionally called Aronson "Sadie," a term Aronson took to be a derogatory reference to Jewish women. Aronson Dep. 181. Aronson filed complaints about many of these incidents with HCE management, but she claims nothing was done to improve the situation.

Under the relatively "high standard" for hostile work environment claims, see *Boumedhi v. Plastag Holdings, LLC*, 489 F.3d 781, 789 (7th Cir. 2007) (sex discrimination claim), HCE is entitled to summary judgment on this claim.  In considering whether a working environment is sufficiently hostile or abusive to be actionable, the court considers the totality of the circumstances, including (1) the frequency of the harassing conduct, (2) the severity of the conduct, (3) whether the conduct at issue is "physically threatening or humiliating, or a mere offensive utterance," and (4) the extent to which the conduct unreasonably interferes with the plaintiff's ability to perform his or her job. *Harris*, 510 U.S. at 17 (sex discrimination claim).  For purposes of summary judgment, the court accepts Aronson's claims that she found these comments and actions subjectively objectionable.  However, the alleged conduct was not severe or pervasive enough to create an intolerable working environment from an objective perspective.  See *Minor v. Ivy Tech State Coll.*, 174 F.3d 855, 858 (7th Cir. 1999); cf. *Shanoff*, 258 F.3d at 705-06 (reversing summary judgment for employer on religious hostile environment claim).  Taking Aronson's testimony as true, some of her co-workers made insensitive and rude comments, but a reasonable jury could not find that this added up to a hostile environment based on religion.  In the context of sexual harassment, the Supreme Court has cautioned that simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not amount to discriminatory changes in the terms and conditions of employment.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998), quoted in *Adusumilli v. City of Chicago*, 164 F.3d 353, 361 (7th Cir. 1998).  The instances that Aronson relies on

here are either too tenuously connected with her religion, too sporadic in frequency, and/or of insufficient severity to support a Title VII claim. They are not comparable in severity or frequency to the evidence that required reversal of summary judgment in *Shanoff*.

The "Wal-Mart" note that Lashbrook allegedly pinned to Aronson's coat may have been in bad taste, but it was a one-time incident. According to Aronson's own deposition testimony – no copy of the actual offending note was  produced – the text of Lashbrook's note made no direct or indirect mention of the fact that Aronson was Jewish. See *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 302-03 (7th Cir. 2004) (requiring a clear link between the harassing behavior and a protected characteristic).

Aronson also testified that Lashbrook subjected her to anti-Semitic remarks at least once every three days. Aronson Dep. 103. If derogatory comments amount to a "concentrated or incessant barrage," *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 431 (7th Cir. 1995), that could support a plaintiff's hostile work environment claim, especially if they are made by a supervisor. Despite the alleged frequency of Lashbrooks remarks, however, Aronson was not able to recall any information about the content of these remarks. Aronson Dep. 104. Such vague allegations of harassment without more specific details are insufficient to survive summary judgment. Rule 56(e) of the Federal Rules of Civil Procedures requires the opposing party to "set forth *specific* facts showing that there is a

genuine issue for trial."  Accord, *Morrow v. Wal-Mart Stores, Inc.*, 152 F.3d 559, 563 (7th Cir. 1998) (affirming summary judgment where affidavit claiming that management knew of offensive photographs at workplace did not include any specifics about who complained, to whom complaints were made, the nature of the complaints, or how the affiant gained personal knowledge of complaints).  "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998), quoting *Hadley v. County of Du Page*, 715 F.2d 1238, 1243 (7th Cir. 1983).  The object of the summary judgment procedure "is not to replace conclusory allegations of a complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Laborers' Pension Fund v. RES Environmental Services, Inc.*, 377 F.3d 735, 739 (7th Cir. 2004) (affirming summary judgment for plaintiff where defendant's affidavit in opposition was generalized and conclusory).

Aronson places a great deal of emphasis on the claim that Servies called her "Sadie" on a number of occasions.  Servies admits that she occasionally called Aronson "Sadie," but claims she was unaware it had any derogatory meaning based on religion.  Plaintiff has not offered any evidence beyond her own conclusory assertions that the name is derogatory, much less unambiguously so.[3]

_____

[3]Plaintiff claims in her deposition that calling someone a "Jewish Sadie" is derogatory.  At no point does she accuse Servies of using the phrase "Jewish (continued...)

This evidence falls well short of the sort of religious hostility expressed in *Shanoff v. Illinois Department of Human Services*, 258 F.3d 696, 698-99 (7th Cir. 2001) (reversing summary judgment on religious hostile environment where plaintiff's supervisor referred to him as a "haughty Jew," told him she knew "how to put you Jews in your place," responded to request for time off for religious holiday by saying "I don't give a damn about your holidays," and said she intended to impede his career).   On its face, the term "Sadie" is certainly not an unambiguous epithet.   Cf. *Cerros v. Steel Technologies, Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002) (dealing with unambiguous ethnic epithet).   In fact, the evidence indicates that the term had more to do with a particular pair of shoes plaintiff wore rather than with her religion.[4]

The comments of co-workers to the effect that Aronson was cheap or rich, or should work only part-time were likewise relatively isolated incidents insufficient to create the sort of work environment actionable under Title VII and were not the responsibility of the employer.   See *Drake*, 134 F.3d at 885; see also *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713-14 (7th Cir. 2004) (isolated events, including offensive comments that were neither physically threatening nor humiliating were insufficient to create an issue of fact on plaintiff's hostile work

---

[3](...continued)
Sadie" as opposed to just "Sadie."

[4]Servies claims that "Sadie" was simply a name Aronson used for herself when wearing a certain pair of shoes.   Aronson denies she ever called herself Sadie but does acknowledge that Servies called her by the name only when she wore a particular pair of shoes.

environment claim).  The court recognizes that the evidence must be viewed in light of the totality of circumstances, *e.g.*, *Cerros*, 288 F.3d at 1046, but this evidence does not add up to a Title VII violation based on a hostile environment.


II.    *Plaintiff's Termination*

Plaintiff's complaint spelled out one Title VII claim for a hostile work environment based on religion and sex and another Title VII claim for retaliation based on her termination.  The complaint did not assert a disparate treatment claim for intentional religious discrimination based on termination.  In Section IV(B) and (C) of her brief opposing summary judgment, for the first time, the plaintiff asserted that the defendant fired her based on her religion.  Pl. Br. at 14-18.


The Seventh Circuit has disapproved of a party seeking to amend a complaint through argument in a brief in opposition to a motion for summary judgment.  See, *e.g.*, *Speer v. Rand McNally & Co.*, 123 F.3d 658, 665 (7th Cir. 1997); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996).  Adding additional claims once the discovery period has ended can create undue delay and prejudice the defendant's ability to defend against that claim.  *Hindo v. University of Health Sciences/The Chicago Medical School*, 65 F.3d 608, 615 (7th Cir. 1995); *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 774 (7th Cir. 1995).

Rule 15(a) of the Federal Rules of Civil Procedure allows a party to amend her pleadings after a responsive pleading has been filed "when justice so requires." Fed. R. Civ. P. 15(a). The court may use its discretion to determine if justice requires the amendment of the pleadings in a particular case. See *Speer*, 123 F.3d at 665. Plaintiff Aronson's EEOC charge claimed sex and religious discrimination and retaliation, and did not spell out more specific theories. Def. Ex. O. Her complaint in this court labeled Count I as "Hostile Work Environment Due to Sexual and Religious Discrimination." None of the allegations in Count I assert that her termination was unlawful; Count I is limited to a hostile environment theory. Count II of the complaint is labeled "Retaliation" and states explicitly: "In retaliation for reporting sexual and religious harassment, the Plaintiff was terminated on November 18, 2004." Contrary to plaintiff's argument in her surreply brief, this complaint did not give fair notice to defendant that plaintiff was alleging that her termination was an instance of disparate treatment based on religion. The court does not believe that a claim of religious discrimination in the termination is properly before the court; that event is before the court only on a retaliation theory.

Plaintiff's theory of retaliation is that she had complained to management about Lashbrook's allegedly discriminatory treatment of her in the past. When Lashbrook became her supervisor, she took advantage of the situation to engineer Aronson's termination on false pretenses – the accusation that she tried to shred a number of documents. According to Aronson's evidence, at the relevant time,

she could not physically have carried the documents to the shredder bin, and Lashbrook knew that she could not have done so.  See Pl. Dep. 300-02.

A plaintiff may prove retaliation by using either the direct method or the indirect, burden-shifting method.  Under the direct approach, the plaintiff must present evidence of (1) a statutorily protected activity, (2) a materially adverse action taken by the employer, and (3) a causal connection between the two.  See *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 404 (7th Cir. 2007).  Under the indirect approach, the plaintiff must also show protected activity and a materially adverse action.  To show a causal connection under the indirect method, the plaintiff may make a prima facie case by showing that she was performing her job satisfactorily and that similarly situated employees who did not engage in protected activity were not subjected to adverse action.  *Pantoja v. American NTN Bearing Mfg. Corp*, 495 F.3d 840, 848 (7th Cir. 2007); *Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002).  If the plaintiff is able to make this showing, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the materially adverse action.  See *Pantoja*, 495 F.3d at 850-51; see generally *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  After such a rebuttal, the employee then has an opportunity to demonstrate that the employer's stated reason was merely pretext for discrimination (or unlawful retaliation).  *Pantoja*, 495 F.3d at 851; see generally *McDonnell Douglas*, 411 U.S. at 804-05.

For purposes of summary judgment, Aronson satisfies the first and second elements of both of these methods.  Prior to her termination, Aronson lodged a number of complaints with HCE management reporting instances of harassment based on religion.[5]  See *Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134, 1147 (7th Cir. 1997) (filing an internal complaint with an employer can constitute protected activity when that complaint indicates discrimination on the basis of some protected class).  In November 2004, Aronson was subject to a materially adverse action when HCE terminated her employment.

To satisfy the third element, Aronson contends that she can show a causal connection from "a pattern of criticism and animosity by her supervisors following her protected activities."  *Hunt-Golliday v. Metropolitan Water Reclamation Dist.*, 104 F.3d 1004, 1014 (7th Cir. 1997).  Plaintiff's theory is that when Lashbrook and Servies received promotions in August 2004, they took the opportunity to retaliate against Aronson's earlier complaints by criticizing her work and by fabricating reasons to terminate her three months later.  Viewed in the light most favorable to plaintiff, a jury could find that she did not put the documents in the shredder bin in November 2004 and that Lashbrook knew she could not have done so.  The evidence regarding this incident simply presents a genuine issue of material fact.  If the facts are as Lashbrook and Servies have testified, it would

---

[5]In her complaint, Aronson also claims that she complained about sexual harassment.  In her brief opposing summary judgment, however, plaintiff does not cite to any instance when she complained to HCE about being harassed on the basis of sex.  At this stage of the case, the claim is limited to one for retaliation in response to complaints about perceived religious discrimination.

have been eminently reasonable to fire Aronson immediately.  But if Lashbrook deliberately framed Aronson to induce Servies to fire her, as Aronson's evidence would permit a jury to find, the combination of temporal proximity to Aronson's complaints about Lashbrook and the false reason for the termination would be sufficient to support an inference of retaliatory motive on the part of HCE. Defendant is therefore not entitled to summary judgment on this claim.

III.   *State Law Claims*

Aronson also asserts claims under state law.  In her brief, she abandoned all but the claim for intentional infliction of emotional distress.  See Pl. Br. at 24. To avoid summary judgment on this claim, plaintiff must offer evidence that the defendant (1) engaged in extreme and outrageous conduct (2) intentionally or recklessly, which (3) caused (4) severe emotional distress to plaintiff.  *Bradley v. Hall*, 720 N.E.2d 747, 752 (Ind. App. 1999).  Indiana courts have set a high standard for the level of conduct necessary to qualify as extreme and outrageous. See *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991) (affirming summary judgment for defendant who carried gun in a holster for confrontation with plaintiff and grabbed for the gun and shook it at plaintiff without removing it from holster); see also *McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1167 (7th Cir. 1997) ("Indiana courts have been reluctant to award damages for intentional infliction of emotional distress in employment cases").

Aronson bases her claim for intentional infliction of emotional distress on her assertion that Lashbrook (along with other unnamed HCE supervisors), "constantly sabotaged [her] efforts to perform her job." Pl. Br. at 23. Plaintiff goes on to claim that Lashbrook's "ongoing and unfounded accusations" caused her to suffer depression, anxiety, panic attacks, and stress. *Id.* at 24. Aronson's allegations, which were insufficiently severe or pervasive to amount to a hostile work environment, are likewise not "so deplorable as to shock and outrage a typical person in the same circumstances." See *Winchester v. Allison Transmission/GMC*, 2006 WL 2450331, *6 (S.D. Ind. Aug. 22, 2006) (granting summary judgment for employer). Aronson has not identified any Indiana cases upholding such a claim for an employee's termination, and certainly not without much more by way of aggravating circumstances than plaintiff's evidence indicates. HCE is entitled to summary judgment on this claim.

*Conclusion*

To the extent plaintiff's claims of religious harassment are supported by evidence properly designated for purposes of summary judgment, the undisputed facts show that they do not rise to the level of severity or pervasiveness necessary to constitute a hostile work environment in violation of Title VII. Likewise, Aronson's alleged treatment at work and the circumstances of her termination were not so deplorable as to meet Indiana's stringent standard for intentional infliction of emotional distress. However, under the generous standard that applies on summary judgment, the court finds that if a jury believed plaintiff's

evidence, it could reasonably find that she was fired to retaliate against her for earlier complaints about what she believed were instances of religious harassment and discrimination.  Defendant's motion for summary judgment is denied as to Count II but granted as to all other claims.  The court will confer with counsel in the near future to schedule a new trial date.

So ordered.

Date: October 19, 2007

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Rochelle Elaine Borinstein
THE LAW OFFICE OF STANLEY KAHN
rborinstein@stanleykahn.com

Aarika Denise Mack
BARNES & THORNBURG LLP
aarika.mack@btlaw.com

John R. Maley
BARNES & THORNBURG
jmaley@btlaw.com